NUGENT et al. v. MOODY et al. (No. 8585.)*

(Court of Civil Appeals of Texas. Galveston. Jan. 15, 1925. Plaintiffs in Error's Motion for Rehearing Denied Feb. 12, 1925. Defendants in Error's Motion for Rehearing Denied March 19, 1925.)

1. **Attorney and client** ⬅️106—**Relation of attorney and client is one of highest trust and confidence requiring attorney to observe utmost good faith.**

Relation of attorney and client is one of highest trust and confidence, requiring attorney to observe utmost good faith toward client, and it was therefore jury's duty to scrutinize all dealings between attorneys and testatrix and her foster child.

2. **Attorney and client** ⬅️147—**Evidence held to support finding attorneys knew of will in plaintiff's favor when plaintiff contracted to give them one-half of estate recovered by them.**

Evidence *held* to support finding that attorneys or one of them knew of existence of will in client's favor when they procured contract whereby client agreed to give them one-half of any of testatrix's property they might recover for her.

3. **Attorney and client** ⬅️133—**Client, permitting attorneys to act for her after discovering their alleged fraud, held estopped to deny liability for reasonable value of services and expenses.**

Where plaintiff, after being informed of existence of will in her favor, permitted defendants to continue to act for her in pending proceedings, she was estopped to deny liability for reasonable value of services performed and expenses incurred, though defendants had concealed existence of will until they procured contract whereby plaintiff agreed to give them one-half of property recovered.

4. **Attorney and client** ⬅️133—**Client's statement to attorney held not notice that she would not accept further services.**

Client's statement to attorney that, since he refused to discuss fairness of contract whereby she agreed to give attorneys one-half of any property recovered for her, she would find some one with whom he would discuss matter, was not notice that she would not accept further services from attorneys in probating will and defending contest.

5. **Attorney and client** ⬅️166(3) — **Evidence held to support finding reasonable value of attorneys' services in will proceedings was $500, and reasonable expenses $300.**

Evidence *held* to support finding that reasonable value of attorneys' services to principal legatee under will in proceedings after she discovered their alleged fraudulent concealment of will in her favor was $500, and that their reasonable expenses therein were $300.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by Elizabeth Stewart Moody and another against C. W. Nugent and another. Judgment for plaintiffs, and defendants appeal. Reversed and rendered in part, and in part affirmed.

Thos. H. Ball and Stevens & Stevens, both of Houston, for appellants.

Moody & Boyles, of Houston, for appellees.

LANE, J. This suit was brought originally by Mrs. Elizabeth Poinbouef, now Mrs. Moody, by which name she will be hereinafter referred to, against G. W. Tharp and C. W. Nugent to cancel a certain contract entered into between her on the one side and Tharp and Nugent on the other, by which she had agreed to give to said Tharp and Nugent one-half of any part of the property of the estate of Mrs. Laura Stewart Hardy, deceased, which they might recover for her in contest which might arise between her and others claiming said property.

During the pendency of said suit, G. W. Tharp died, and other parties, representing themselves to be the heirs of Tharp, made themselves parties to the suit; but in view of the issues presented by this appeal, it will not be necessary to further mention them in discussing the issues involved.

As the pleadings of the several parties cover more than 77 pages of the record, it becomes necessary for us, in an effort to make a condensed substantial statement of the material averments of such pleas, to make the following statement:

The plaintiff alleged that Mrs. Laura Stewart Hardy died on or about May 14, 1914; that she left a will by which she gave plaintiff practically all of her estate, which was of the value of $150,000; that in the month of October, 1913, about six months prior to her death, Mrs. Hardy, while in feeble health, handed her said will, inclosed in a sealed envelope on which her name only appeared, to the defendant G. W. Tharp and requested him to place it in his safe, and that after she was gone to give it to Elizabeth (Elizabeth Poinbouef), for her protection; that in the latter part of October, 1913, a few days after the delivery of the will to G. W. Tharp, Mrs. Hardy went to Conroe, a town about 50 miles from Houston, and shortly after going to Conroe she went to the office of C. W. Nugent, and in a conversation with him about her business affairs she expressed the thought that she would not live long and told him, who had been for many years her attorney and confidential adviser, and to whom she had trusted many of her business affairs, and who was guardian of Mrs. Moody from 1912 to 1913, the time of her marriage, that when she died he would find her will in the safe of G. W. Tharp at Houston; that Tharp had received the will from Mrs. Hardy and had placed the same in his safe in October, 1913; that Elizabeth (Mrs. Moody) had no knowledge of the existence of said will at the time of the execution of the contract sought to

be canceled, but that at such time both Tharp and Nugent knew that said will was in existence and accessible to them, and that they fraudulently concealed from her (Mrs. Moody) the fact of the existence of said will for the purpose of obtaining from her the execution of the contract above mentioned and described, and that by reason of said fraudulent concealment they did induce Mrs. Moody (formerly Poinbouet) to execute said contract; that said Tharp and Nugent at all times prior to the execution of said contract led her to believe that Mrs. Hardy left no will, but that in a few days after the execution of said contract defendant Tharp brought the will executed by Mrs. Hardy to her and told her that after refreshing his memory he had found the will in his safe; that as soon as she learned of the existence of the will, which gave her practically all of the property left by Mrs. Hardy, of the value of $150,000 or more, she at once and immediately told Tharp, substantially, that since the will, of which she had no knowledge at the time of the execution of said contract, had now been produced, she thought the contract, by the terms of which he and Nugent were to get one-half of so large an estate for the performance of the services necessary to be performed to protect her interest in the premises, was unfair and should not be enforced against her, and that, in reply, defendant Tharp told her that she had made the contract and that she must stand by it, and that he would not discuss the matter of its repudiation with her, whereupon she told Tharp that if he would not discuss the matter with her she would try to find some one with whom he would discuss such matter.

The plaintiff made further allegations to the effect that defendants had misrepresented other material facts, and had, after the execution of said contract, accepted inconsistent and hostile employment.

Defendants answered by general denial, and alleged that neither Tharp nor Nugent knew that the will of Mrs. Hardy was in existence at the time of the execution of the contract in question. They admitted that in October, 1913, Mrs. Hardy delivered to defendant Tharp an envelope containing her will, and that she told him to put it in his safe and that as soon as she was gone to deliver it to "Elizabeth" for her protection, but denied that Tharp knew that the package handed to him contained the will of Mrs. Hardy.

They further admitted that in the latter part of October, 1913, Mrs. Hardy conferred with defendant Nugent concerning her business affairs, and particularly with reference to her will, and at that time informed him that upon her death he would find her will, written by Fenny McDonald, under seal in Judge Tharp's office in Houston, and that she had left practically all of her estate to plaintiff.

They further pleaded that after her death, Nugent inquired of Tharp concerning the will of Mrs. Hardy, and was told by him that he knew of no will being in existence, and that he only knew of a draft of a will which he had prepared for Mrs. Hardy, and which she had destroyed.

They specially pleaded that plaintiff, Mrs. Moody, was estopped from canceling said contract, because of the fact that she was fully apprised of the existence of the will of Mrs. Hardy for a period of three months before she filed this suit, and that notwithstanding her knowledge of the existence of said will, she thereafter requested defendants to proceed to carry out said contract, and upon such request and acquiescence on the part of plaintiff they proceeded to faithfully carry out their part of said contract, by offering the will for probate in Harris county and resisting the protest made against said probate by other heirs of Mrs. Hardy, and in resisting other suits brought by said heirs in Montgomery county adverse to the interest of plaintiff, and that they were not aware of any dissatisfaction with their said services until about the time this suit was filed; that in said efforts to protect the interest of plaintiff they paid from their own funds large sums of money which they assumed to pay under the terms of said contract.

They further pleaded as follows:

"Plaintiff accepted all of said services and induced all of said expenses to be incurred by defendants in her behalf, executed the appeal bond required to perfect her appeal in Montgomery county, as well as her bond as temporary administrator in Harris county, and it was not until after both of said contests in the county courts of Montgomery and Harris counties, and about three months after the finding of the said will and its delivery to plaintiff, as aforesaid, that this suit was filed, and these defendants know of no facts whatever justifying the action of plaintiff in filing this suit, and these defendants verily believe that, unadvised by any one fully cognizant of the conditions affecting her interest and the magnitude of the fight which she still had before her after the successful probate of the will in the county court of Harris county, this suit would not have been filed, and defendants aver that under all the facts and circumstances plaintiffs are estopped from seeking to cancel said contracts or attempting to rescind same."

And they prayed that the relief in plaintiff's petition asked be not granted, and that defendants be fully confirmed in all their rights under and by virtue of said contract.

Further pleading by way of cross-bill, they prayed for damages for breach of said contract; or, in the alternative, for the value of the services which they had rendered in behalf of plaintiff under and by virtue of said contract, and the subsequent ratification, approval, and acquiescence of plaintiff, which they alleged to be not less than $75,000; and for general relief.

Plaintiff denied the allegations in defend-

ants' answer; and replying to the allegations in said answer seeking to estop plaintiff from rescinding said contract because of the alleged ratification thereof by acquiescence therein after the existence of said will became known to her, she alleged that as soon as she learned of the existence of said will, she notified defendants of her dissatisfaction with said contract, and defendants, in turn, notified her that they would not even discuss the matter with her; that thereupon she told them that if they would not discuss the matter with her, she would try and find some one with whom they would discuss such matter, and she thereupon set about trying to procure other attorneys to take the control of her affairs out of defendants' hands, and did procure said attorneys as soon as possible. She further alleged that she immediately set about to try to find other attorneys, but it was not until about three weeks later that she succeeded in having her case put before the firm of Moody & Boyles, who were practicing attorneys in the city of Houston, and in the meantime said will had been filed for probate in Harris county, Tex., by the defendants, and such application was to come on to be heard about the middle or latter part of July, 1914. She further alleged as follows:

"In order to secure the services of Moody & Boyles in her behalf, plaintiff stated to them, among other things, that she had been induced by defendants to sign said purported contract and conveyance upon the representation to her by defendants that Mrs. Hardy had left no will, when in truth and in fact Mrs. Hardy had left a will devising practically her entire estate in plaintiff, and had left said will in the care and custody of defendant Tharp, who had promised and agreed to preserve the same and deliver it to plaintiff upon the death of Mrs. Hardy, and that such fact had been concealed by defendants from plaintiff until after she had signed said instrument, and that shortly thereafter said Tharp had produced said will and had admitted that it had been in his custody for a number of months. Said Moody & Boyles thereupon stated to plaintiff that they were unwilling to believe, merely upon plaintiff's ex parte statement, that the conduct of defendants, and particularly the conduct of said Tharp, had been such as she had stated, and that the only way in which they could be convinced that she had correctly stated the case would be for them to hear the testimony of said Tharp and said Nugent as it would be given upon the witness stand upon the hearing of the application for the probate of the will, which hearing was then near at hand, and believing as she did that it was absolutely necessary for her to procure the services of said Moody & Boyles, she was forced to await their decision in the matter.

"Plaintiff further shows to the court that a member of said firm did attend said hearing and heard the testimony of said Tharp and Nugent, but before said Moody & Boyles had advised her whether or not they would undertake the case, there came on to be heard in Montgomery county the application for administration upon the estate of Laura Stewart Hardy, which had been filed by her brother,

E. B. Stewart, and to which application said Tharp and Nugent had filed a plea in abatement; and before advising her of their decision in the matter, a member of the firm of Moody & Boyles attended the hearing in Montgomery county, and there heard the further testimony adduced upon that hearing. That within less than a week after having heard the testimony upon the hearing in Montgomery county, said Moody & Boyles advised plaintiff that they would undertake her case."

The case was tried before a jury, and at the conclusion of the testimony the defendants agreed in open court that plaintiff should have a decree canceling said contract and divesting the defendants of the one-half interest therein provided for, which was, as heretofore stated, the sole and only relief prayed for by plaintiff.

The case was then submitted to the jury on special issues under defendants' cross-bill, in response to which the jury found that the defendants, or one of them, knew of the existence of the will of Mrs. Hardy at the time the contract was entered into between them and plaintiff; that the reasonable value of the services rendered by the defendants for plaintiff, after the execution of said contract, was the sum of $500; and that under said contract defendants had expended for the benefit of plaintiff the sum of $300.

Thereupon the court entered judgment reciting the agreement for the cancellation of said contract, and canceling the same; and after reciting the special findings of the jury said judgment recited as follows:

"And it appearing to the court that at the time the contract of May 16, 1914, was entered into by plaintiff, Elizabeth Moody, with the defendants, she did not know of the existence of the will of Laura Stewart Hardy, and the jury having found that the defendants, or at least one of them, knew of the existence of the will, it is the judgment of the court that under such statement of facts, defendants are not entitled to recover as for quantum meruit for services rendered or for money expended under such contract."

In view of the agreement made by defendants to the effect that plaintiff should have a decree canceling their contract, the only issues presented for our determination are:

First. Were the defendants entitled to a recovery of the reasonable value of their service in instituting and representing plaintiff in the suits in Harris and Montgomery counties, and all reasonable and necessary expenses incurred by them in such suits, after appellee was apprised of the existence of the will?

Second. Did the court commit error in permitting the witnesses Mrs. Moody and L. B. Moody to testify to matters complained of by appellants in their bills of exception Nos. 1 and 2?

Third. Was the evidence such as would authorize the jury to fix the reasonable val-

ue of the services of Tharp and Nugent in conducting the suits in Harris and Montgomery counties in behalf of Mrs. Moody, after she discovered the existence of the will, at $500, and to fix as the amount reasonably and necessarily expended by them in attending to said suits at $300?

We will dispose of the issues presented in the order named.

It was the theory of appellee that it was shown by the evidence, as found by the jury, that defendants Tharp and Nugent, or one of them, did know of the existence of the will of Mrs. Moody at the time the contract between them and Mrs. Moody was executed, and that having such knowledge, they fraudulently concealed the fact of the existence of said will from Mrs. Moody for the purpose of procuring said contract, and that by said concealment they did fraudulently procure the same, and that as Tharp and Nugent were guilty of such fraud, they were not entitled to any pay for their services, which they performed in the premises, either before or after the alleged fraud was discovered. The trial court adopted this theory, refused to allow defendants to recover for the value of such services as they had performed in the premises after Mrs. Moody had been apprised of the existence of the will or any sum whatever.

In combating the theory of appellee and the trial court, appellants contend: (1) That the finding of the jury that the defendants, Tharp and Nugent, or one of them, knew of the existence of the will of Mrs. Hardy at the time they procured the contract from Mrs. Moody, was unsupported by the evidence; and (2) that if it be conceded that such finding was supported by the evidence, and that such finding justified a finding by the court that the contract was procured by fraud, still defendants should have been permitted to recover the reasonable value of their services performed for Mrs. Moody after she became apprised of the existence of the will of Mrs. Hardy, because after so apprised, Mrs Moody encouraged said defendants to proceed with the probate of the will and to perform the other services in her interest, by her presence at all times during the progress of the legal proceedings in which they were engaged for her, and by her seeming acquiescence in their said services, and because she knew, after the will was discovered by her, that the defendants were performing said services for her and were incurring expenses in so doing, and that notwithstanding such knowledge, she did not inform defendants that she did not desire such services and thereby terminate the same, but, to the contrary, she knowingly and without any objection on her part received the benfits of such services and expenses, and therefore for the several reasons stated she is estopped to deny that defendants are entitled to recover for the value of such services and the sums expended.

[1, 2] We cannot sustain the contention of appellants that the finding of the jury that defendants Tharp and Nugent, or one of them, knew of the existence of the will of Mrs. Hardy at the time of the execution of the contract between them and Mrs. Moody, was unsupported by the evidence. The relation of attorney and client is one of the highest trust and confidence, requiring from the attorney the observance of the utmost good faith toward his client, and in view of this fact, the jury was not only authorized but it was their duty to closely scrutinize all dealings between Tharp and Nugent and Mrs. Moody and her foster mother as their attorneys and confidential advisers, as well as all the facts and circumstances shown to have surrounded the execution of the contract in question and the production of the will soon after such execution, we are not prepared to hold that the facts and circumstances shown were insufficient to support the findings of the jury complained of.

[3] We think, however, that appellants' second contention should be sustained. It was shown by the testimony of the defendant G. W. Tharp, given in the probate proceedings and which was introduced in the present case, that he (Tharp) had taken the sealed envelope containing the will of Mrs. Hardy from his safe some days prior to the 6th day of June, 1914; that he opened the envelope and discovered the will of Mrs. Hardy by which she gave practically all her estate to Mrs. Moody; that on June 6, 1914, about 20 days after the execution of the contract in question, he went to the home of Mrs. Moody, showed her the will, and told her that after refreshing his memory he had found it in his safe. Mrs. Moody testified that when Tharp produced the will on the 6th day of June he told her that since the will had been found she had "fair sailing," or words to that effect; that immediately upon being so told by Tharp, she said to him that since the will had been discovered, of which she had no previous knowledge, it would be unfair to her for defendants Tharp and Nugent to enforce against her the contract theretofore executed by her; that to this statement made by her, Tharp replied that she had made the contract and should stand by it and that he would not discuss her right to repudiate it with her; that in reply to Tharp she told him that since he would not discuss the matter with her she would try to find some one with whom he would discuss it.

She testified further that after the conversation with Tharp above stated, she immediately set about trying to procure the services of other attorneys to take control of her affairs out of the hands of Tharp and Nugent, but it was not until about three weeks later that she saw the firm of Moody & Boyles, who were practicing attorneys in the city of Houston, and that in the mean-

time an application for the probate of the will of Mrs. Hardy had been filed in Harris county, Tex., by Tharp and Nugent, and that such application was to be heard about the latter part of July, 1914; that when she saw Moody & Boyles, with a view of employing them, she told them the facts leading up to the execution of the contract, and the subsequent discovery of the will of Mrs. Hardy; that thereupon Moody & Boyles said that they were unwilling to believe, merely upon her ex parte statement, that Tharp had been guilty of the conduct with which she had charged him, and that before they would take her case they would want to hear the testimony of Tharp and Nugent as it would be given upon the witness stand upon the hearing of the application for the probate of said will, which hearing was to come up in about two weeks; that when said application was heard, Mr. Boyles, of the firm of Moody & Boyles, did attend said hearing and heard the testimony of Tharp and Nugent, but before Moody & Boyles had advised her that they would undertake the case there came on to be heard in Montgomery county the application for administration upon the estate of Mrs. Hardy, which had been filed by her brother, E. B. Stewart, and to which Tharp and Nugent had filed a plea in her behalf, praying for the abatement of said application, and that before she was advised by Moody & Boyles of their decision in the matter of taking her case, Mr. Boyles attended the hearing in Montgomery county and there heard the further testimony adduced upon that hearing, and that in about a week after having heard the testimony upon the hearing in Montgomery county Moody & Boyles advised her that they would take her case.

It is shown that Mrs. Moody was present at the hearing of the suits in both Harris and Montgomery counties and knew that Tharp and Nugent were performing valuable services and expending money in her behalf, and that notwithstanding such knowledge she did not inform either Tharp or Nugent that she did not desire their said services until said services had been performed and money expended, all of which inured greatly to her benefit, and not until about the time this suit was filed on the 8th day of September, 1914, more than three months after she was apprised of the existence of the will.

[4] We do not think the statement of Mrs. Moody, made to Tharp when she first learned of the existence of the will, that since he had refused to discuss the fairness of the contract with her she would try to find some one with whom he would discuss the matter, could be construed as notice to him that she would not accept further service from him and Nugent in the matter of probating the will and in protecting her interests which might be and which were involved in the suits in Harris and Montgomery counties.

While it is true, as contended by appellee, that the courts of equity have long since established the rule that transactions between attorney and client should be decreed void on the ground of constructive fraud if found to be unfair or obtained by undue advantage, such rule, we think, is not applicable to the facts of the present case in so far as they relate to transactions had between the parties after both parties had been fully advised of the alleged fraud. Mrs. Moody was fully advised of the alleged fraudulent acts of Tharp and Nugent on the 6th day of June, 1914, and notwithstanding such advice and knowledge, she permitted, if she did not indirectly authorize, Tharp and Nugent to do such things and to perform such services as were necessary to protect her interest in the pending suits in Harris and Montgomery counties. She knew these services were being performed and made no objection thereto, but, to the contrary, she did, under the indirect advice of her attorneys, Moody & Boyles, permit Tharp and Nugent to proceed with their effort to probate Mrs. Hardy's will in Harris county over the contest of others, and to defend her interest in the suit instituted by E. B. Stewart in Montgomery county. Under these circumstances, we think she is estopped to assert that she is not liable to appellants for the value of the services reasonably performed by Tharp and Nugent after she was advised of the alleged fraud, as well as such reasonable expenses incurred by them in the premises, after having been so apprised. We therefore reach the conclusion that the court erred in not rendering judgment for appellants for $800, the aggregate sum found by the jury as the reasonable value of the services performed by Tharp and Nugent in the premises, and the expenses incurred by them therein, after the discovery of the will, and having so concluded, so much of the judgment as denies such recovery is reversed, and judgment is here rendered in favor of appellants for said sum.

We overrule appellants' complaint of the admission of the testimony of Mrs. Moody and L. B. Moody, as disclosed by appellants' bills of exception Nos. 1 and 2. We think the testimony was admissible for the purpose for which it was offered and admitted, as shown by the court's qualification of said bills.

[5] This brings us to a consideration of the third and last issue presented, that is: Were the findings of the jury that the reasonable value of the services of Tharp and Nugent in conducting the suits in Harris and Montgomery counties, in behalf of Mrs. Moody, after she became apprised of the existence of the will of Mrs. Hardy, was $500, and that the sums reasonably and necessarily expended by them in attending to said suits was $300, so against the weight and preponderance of the evidence as to be clearly wrong?

Appellants contend that the evidence was such as required the jury to find a much larger sum than it did as the value of the services of Tharp and Nugent, and to require a finding that the expenses incurred by them in the suits in Harris and Montgomery counties was $625; and the appellee contends that the evidence was such as to authorize the fixing of the value of such services at $500, and that the evidence was wholly insufficient to authorize a finding of any expenses.

We think there was evidence to support both findings; at least, such findings were not so against the evidence as to be clearly wrong.

As to the value of the services, several reputable lawyers testified: One fixed it at $1,500 to $2,500; another at $15,000; another at $15,000; another at $500 to $1,000; another at $750; and another at $500. In addition to the testimony of said lawyers, the jury heard the evidence as to what labor and services were given by Tharp and Nugent in the two suits in Harris and Montgomery counties. ' With reference to the sums of money they paid out in the interest of Mrs. Moody, C. W. Nugent testified that he and G. W. Tharp paid the premium on a $2,000 appeal bond, which was somewhere about $125; and Phillip Tharp, son of G. W. Tharp, deceased, testified that he found a book among certain papers in his father's office. A certain statement in said book was introduced in evidence, which is as follows:

| | | |
|---|---|---|
| May 18th. | Recording, Harris county | $ 1 50 |
| May 18th. | Recording, Wharton county | 50 |
| May 19th. | Recording Wharton county | 2 25 |
| May 19th. | Nugent | 10 00 |
| May 20th. | Recording, Wharton county | 1 50 |
| May 21st. | Recording, Harris county | 1 00 |
| May 21st. | Certified copies | 1 00 |
| May 21st. | Nugent | 250 00 |
| May 23d. | Conroe trip | 2 80 |
| May 23d. | Recording and cert. copy | 1 00 |
| May 24th. | Ticket to Henrietta | 10 80 |
| May 25th. | Board and room | 1 50 |
| May 25th. | Railroad fare from Wichita Falls | 55 |
| May 26th. | Room and board, Archer | 1 50 |
| May 27th. | Ticket home | 12 10 |
| May 27th. | Board, Wichita Falls | 50 |
| May 28th. | Board | 1 50 |
| May 26th. | Stenographer, Archer | 1 00 |
| May 26th. | Recording, Archer | 5 25 |
| May 23d. | Telegram | 60 |
| May 26th. | Telegram | 75 |
| May 30th. | Telegram | 75 |
| May 30th. | T. W. Menefee | 25 00 |
| June 3d. | Expenses, Wharton | 4 40 |
| June 3d. | Recording, Wharton | 2 00 |
| June 23d. | Gave Overman | 75 00 |
| July 24th (or 27th). | Witness fees | 10 00 |
| July 28th. | Board, witnesses | 4 00 |
| August 14th. | Certified copies | 3 25 |
| Expenses Conroe case, railroad fare | | 8 90 |
| Railroad fare | | 8 90 |
| Elizabeth's board | | 3 10 |
| Board for witnesses | | 11 00 |
| Mrs. Moon, fees | | 2 00 |
| Chas. A. Smith, fees | | 3 50 |
| Henry Johnson, fees | | 3 00 |
| T. Roberts, fees | | 5 00 |
| Arthur Gravis, fees | | 5 00 |
| On October 22d, stenographer's bills | | 20 00 |

The aggregate of the charges shown in said statement is $501.60. No one testified that the items charged in the statement represented sums paid out by Tharp and Nugent in the necessary conduct of the affairs or business of Mrs. Moody under their contract of May 16, 1924, and there' is nothing in the statement tending to show that the sums indicated were so paid, except that it appears that such charges appear to have been made after the date of the execution of the contract, and except that the nature of the sums charged would indicate that they were made in Mrs. Moody's behalf; but defendant Nugent testified at great length relative to expenses paid by him and Tharp, stating that they procured the attendance of witnesses in the trial of the cases in Harris and Montgomery counties and paid their railroad fare, hotel bills, witness fees, recording fees, etc., though he did not state the specific amounts so paid. Tharp, who it may be inferred, made the entries in the book mentioned, was dead at the time of the trial.

In attacking the rights of appellant to recover for expenses incurred, independent of the grounds upon which the court refused a recovery of same, the appellee insists that there is really no evidence in the record showing any expenditures for the benefit of her; that it is not made to appear from the book account introduced who made the charges, who paid the money, nor on whose account it was paid; but notwithstanding the absence of such evidence, the jury inferred that some of the items charged had been expended by Tharp and Nugent under the contract with Mrs. Moody, and from such inference found that $300 had been so expended.

We think that from the nature of some of the charges and the dates when they were made, the jury might have reasonably concluded, when considered in connection with the testimony of Nugent, that they were entries tending to show sums paid in the interest of Mrs. Moody. The sum of such items is about $175. The sum mentioned might have been arrived at by deducting from the total of said items the charge of date May 21st, "Nugent $250.00," and the charge of date June 23d, "Gave Overman $75.00." It is not indicated by the noting of these charges, or by anything else shown, that they were proper charges against Mrs. Moody. How the payment of the $250 to Nugent benefited Mrs. Moody, if it did so, or who Overman was and why he should be paid $75 in the interest of Mrs. Moody, are nowhere shown. We therefore think the jury very reasonably refused to allow these items as just charges against Mrs. Moody. The remaining $175, however, when added to the $125 paid on the premium to get appeal bond, would make the $300 found by the jury as the amount of expenses paid by Tharp and Nugent for Mrs.

Moody's benefit, and we are not prepared to hold, under all the facts and circumstances shown, that the findings of the jury on the issues are unsupported by the evidence.

For the reasons stated, we think so much of the judgment as denies to appellants a recovery of the $800 for services rendered and money expended should be reversed, and that judgment should here be rendered for appellants for said sum, and it is so ordered.

The judgment in all other respects is affirmed.

Reversed and rendered in part, and in part affirmed.