## In re MINOLTA CAMERA PRODUCTS ANTITRUST LITIGATION.

### Nos. B–86–613, B–86–2771, B–86–3070 and B–86–3072 to B–86–3105.

United States District Court,
D. Maryland.

June 23, 1987.

Craig J. Hornig, Michael F. Brockmeyer, Asst. Attys. Gen. of Maryland, Carl Hisiro, Asst. Atty. Gen. of Pennsylvania, Illona Kirshon, Linda Gargiulo, Asst. Attys. Gen. of New York, for plaintiffs.

A. Paul Victor, Richard Taffet, and Weil, Gotshal & Manges, New York City, Donald E. Sharpe, Baltimore, Md., for defendant.

WALTER E. BLACK, Jr., District Judge.

Thirty-six states and the District of Columbia ("the States"), acting as *parens patriae* on behalf of their resident consumers, pursuant to 15 U.S.C. § 15c(a)(1), initiated the instant antitrust actions. The States of New York and Maryland filed their Complaints on February 24, 1986, and the Commonwealth of Pennsylvania filed its Complaint on April 11, 1986. After the filing of these initial Complaints, extensive settlement negotiations ensued between counsel for Minolta Corporation ("Minolta") and counsel for these three States. These negotiations proved to be successful, and on July 17, 1986, New York and Maryland executed their repective Settlement Agreements with Minolta; Pennsylvania executed its Agreement on August 18, 1986.

The Complaints in these actions alleged that Minolta and numerous camera retailers, named and unnamed in this action, entered into a nationwide conspiracy to fix, maintain, or stabilize the retail prices at which the Minolta Maxxum and Minolta AF–Tele camera products were sold to the public, in violation of federal and state antitrust laws.

Because the challenged retail pricing policies of Minolta were applied nationwide, Minolta had knowledge that other States would be conducting their own investigations, and therefore offered the same terms of settlement that had been agreed to by New York, Maryland, and Pennsylvania nationwide. This resulted in thirty-four additional States filing their Complaints on October 6, 1986, each in its *parens patriae* capacity. Plaintiff, John P. Troncelliti,

brought a similar class action antitrust suit in August, 1986, on behalf of himself and all others similarly situated who purchased the Minolta Maxxum or AF–Tele products and resided within the states of Alabama, Georgia, Hawaii, Idaho, Louisiana, Maine, Michigan, Mississippi, Montana, Oklahoma, Rhode Island, South Carolina, Tennessee, and Wyoming (those States not included in the thirty-six *parens patriae* suits) at the time of purchase, and all other persons, who are not natural persons, including all proprietorships, partnerships, corporations, and other entities who purchased at retail a Maxxum or AF–Tele, but excluding (i) any federal, state, and local government purchasers, (ii) any unnamed coconspirator, and (iii) defendants or any subsidiary or affiliate of defendants or any manufacturer of cameras. This suit is also the subject of a Settlement Agreement, which will be considered by the Court in a separate opinion.

Plaintiffs in all of the State *parens patriae* cases have submitted to the Court their Settlement Agreements with defendant Minolta for approval pursuant to 15 U.S.C. § 15c(c) and Fed.R.Civ.P. 23(e). The Court has had the opportunity to consider the memorandum in support of the joint motion for final approval of the Settlement Agreement, along with the parties' comments on the terms of the settlement at an open hearing held on June 19, 1987. This Court is also quite familiar with the terms of the Settlement Agreement from prior proceedings, including preliminary approval of the Settlement Agreements on December 12, 1986.

The Court will summarize the terms of the thirty-seven virtually identical Settlement Agreements executed by the States and Minolta before determining whether they satisfy the requirements for final approval of the Court.

Each Agreement provides that natural persons residing in the State at the time of the purchase who bought a Maxxum 7000 or AF–Tele camera from January 1, 1985, through March 21, 1986, for non-business use ("qualified purchaser"), are eligible to receive a refund of $15.00 for each Max-

xum purchased and $8.00 for each AF–Tele purchased. In order to qualify for such payment, a qualified purchaser must complete and file a claim form.

Minolta has agreed to pay into an interest-bearing account for each State (a "Settlement Account"), an amount sufficient to pay $15.00 for every Maxxum and $8.00 for every AF–Tele sold by Minolta within each State for the period of March 1, 1985 through March 21, 1986 (the "Settlement Period"). The end date of this period is one week after Minolta sent a letter to each of its retail customers suspending its policy of terminating retailers who did not comply with the minimum price schedules for these products. The Agreement excludes from Minolta's obligation the two-month period from January 1, 1985, through March 1, 1985, because of Minolta's continued assertion that no antitrust injury resulted from the suggested minimum price in effect during that period. The States, however, have agreed to pay claims made by individuals who purchased the Maxxum and AF–Tele during such period, and the payments will be obtained from accrued interest on each State's Settlement Account and out of funds available for purchasers during the March 1, 1985 through March 21, 1986 period who fail to submit a valid claim. Minolta will also pay $1.00 per camera sold during this time period to partially cover the administrative costs incurred by the plaintiffs in implementing this Agreement.

In order to ascertain the appropriate amount to be placed in each Settlement Account, Minolta provided the States with sales data, which it maintains in the regular course of its business, reflecting the number of cameras it sold at retail in each State during the Settlement Period.

The claim form that each purchaser had to complete and submit to a claims processor in order to be eligible for a refund has been previously approved by the Court. It requests certain basic identifying information as to the type of camera purchased, its serial number, and the date and place of purchase. Minolta and its retailers provided the States with purchaser information in the form of a warranty card sent by pur-

chasers to Minolta and in the form of retail sales documents. Minolta has agreed not to object to any purchasers' claims which have been so identified by Minolta and its retailers that are consistent with their records.

The Settlement Agreements provided for a detailed and comprehensive process for notifying potential claimants of the existence of the Agreement, which has been set forth in the Plan of Notice and Claims Procedure, approved by this Court on December 12, 1986. Within 30 days following the execution of the Settlement Agreement, Minolta identified potential qualified purchasers by producing to the States its records kept in the ordinary course of its business which would identify such purchasers. In addition, Minolta sought the cooperation of its dealers in obtaining records they maintained that would help identify qualified purchasers, and would, accordingly, convey such information to the States. Upon this Court's preliminary approval of the Settlement Agreements, the States mailed notice of the Settlement to purchasers identified through this process. Those who were not identified were provided with notice of settlement through publication, within 45 days of this Court's preliminary approval of the Settlement.

The period for filing of claims ended 135 days after the Court's preliminary approval of the Settlement Agreements, April 27, 1987. The Settlement Agreement also provides for notice of rejection of a claim to the purchaser, along with the reasons for such rejection and of his rights to reconsideration and appeal. If, after reconsideration the claim is again rejected, the claimant is entitled to petition the Court for a final determination of his status.

Under the terms of the Agreement, the payment of consumer claims is the first priority. After satisfaction of the purchasers' claims, the States may make claims on the fund for settlement administration costs and expenses and for the States' costs and attorneys' fees, which are subject to an agreed upon maximum.

The parties have agreed that the States shall mail the payments to qualified pur-

chasers who have submitted approved claims within 45 days of final Court approval of the settlements, and that these checks shall be valid for six months, in accordance with the provisions of the Uniform Commercial Code.

In addition to the above described monetary payment, Minolta has agreed to the entry of a Final Judgment and Consent Decree. The consent decree provides in pertinent part that for five years Minolta will not agree with its retailers to fix, maintain, or stabilize the retail prices at which any of the items in the Maxxum or AF–Tele product lines are sold to the public. Minolta is further enjoined from terminating, or otherwise discriminating against, any retailers of these camera lines who fail to adhere to Minolta's suggested pricing of these products. Finally, it is agreed that Minolta must inform its current retailers in each State, and those who become retailers in each State during the injunctive periods, of their right to independently determine the retail prices at which these products are sold to consumers.

The States have agreed in return for the above monetary payments and injunctive relief to dismiss their claims, on the merits and with prejudice, against Minolta upon final approval of the Settlement Agreement by the Court. They have further agreed that they will not sue any Minolta dealer located within their States and not named as a defendant in these lawsuits.

## STANDARDS FOR APPROVAL

The standard for determining whether a proposed settlement should be approved is whether the settlement is "fair, reasonable and adequate." *Manual on Complex Litigation* § 1.46 at 56–57 (5th ed. 1982); *In re Mid-Atlantic Toyota Antitrust Litigation*, 605 F.Supp. 440, 442 (D.Md.1984). In *Mid-Atlantic Toyota* at 442, 443, the Court followed the bifurcated analysis of late Judge Blair of this District in determining whether the proposed settlement was worthy of Court approval. That analysis included separate inquiries into the "fairness" and the "adequacy" of the proposed settlement. On the element of "fairness," Judge Blair stated:

The factors tending to reveal the fairness of a settlement are those which indicate the presence or absence of collusion among the parties. Because of the danger of counsel's compromising a suit for an inadequate amount for the sake of insuring a fee, the court is obligated to ascertain the settlement was reached as a result of good-faith bargaining at arm's length. The good faith of the parties is reflected in such factors as the posture of the case at the time settlement is proposed, the extent of discovery that has been conducted, the circumstances surrounding the negotiations and the experience of counsel.

*In re Montgomery County Real Estate Antitrust Litigation,* 83 F.R.D. 305, 315 (D.Md.1979). In addressing the second element of "adequacy" Judge Blair stated:

In evaluating the "adequacy" of a proposed settlement, the court must weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement. This necessarily requires the court to make a careful assessment of all the facts and a thorough analysis of the applicable law. It is not, of course, necessary or desirable to "try" the case to determine whether a settlement is adequate since the very purpose of settlement is "to avoid the trial of sharply disputed issues and to dispense with wasteful litigation."

In assessing the adequacy of the proposed settlement, courts should weigh the amount tendered to the plaintiffs against such factors as (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

## FAIRNESS

This Court finds that the Settlement Agreements were reached as a result of

good-faith bargaining conducted at arm's length between experienced counsel. The negotiations which resulted in these settlements were conducted by members of the Attorney General Offices of the original three states involved, who have expertise in antitrust and complex multi-party litigations, and by Weil, Gotshal and Manges, a prominent litigation firm in New York, likewise experienced and able, which devotes a significant portion of the firm's practice to antitrust matters. Only following months of extensive pre-complaint investigations conducted by the Attorney General Offices in Maryland, New York and Pennsylvania, were the initial lawsuits filed. Settlement negotiations ensued between counsel soon after the commencement of the suits and were directed at settling the litigation as to Minolta as well as to all Minolta retailer defendants.

The Settlement Agreement before this Court was reached in August 1986, after months of negotiations. The plaintiff States before the Court now include those States that decided to join in the settlement. Consumers residing in states that did not choose to file a *parens patriae* action on their behalf are a part of the class action which has been coordinated as part of this litigation. *Troncelliti v. Minolta*, (Civil Action No. B–86–3848).

At all times the nature of these settlement negotiations was adversarial. Indeed, the comprehensiveness of the settlement suggests the professionalism underlying it. There is nothing in the record which would indicate the settlement was reached prematurely, through collusion, or that the negotiations were conducted in bad faith. The Court cannot overlook the governmental nature of these *parens patriae* suits in which the primary concern of the Attorneys General is the protection of and compensation for the States' resident consumers, rather than insuring a fee for themselves, which can only be obtained under the Settlement Agreement after satisfaction of the purchasers' claims. The Court concludes the settlements were reached in an appropriate and fair manner.

## ADEQUACY

Relying on the factors articulated by Judge Blair, the Court finds that the monetary payments that will be made to qualified applicants represent the amounts by which these consumers were allegedly overcharged because of the Minolta retail pricing policies challenged in these lawsuits. Plaintiffs have retained Robert J. Larner, an expert economist of the economic research and consulting firm of Charles River Associates, who has provided the Court with evidence of the effect Minolta's pricing policies had on retail prices. In his twenty-seven page affidavit filed with the Court on December 10, 1986, he concluded through an analysis of market factors during the relevant period and of available evidence from pricing surveys that

> (1) it is unlikely that Minolta's policies with respect to suggested minimum retail prices had the effect of elevating the average retail price of the Maxxum 7000 by an amount as large as $15, and (2) it is also unlikely that the same policies had the effect of elevating the average retail price of the AF–Tele by more than $8.

In his conclusion he stated,

> that the proposed settlement between the states and Minolta is fair, reasonable, and adequate in protecting the interests of the consumers on whose behalf the states are acting. I have found no reason to think that the settlement would not adequately compensate consumers for any overcharge they may have paid as a result of Minolta's pricing policies. This opinion is based upon my study of the marketplace in which the SLR cameras are sold, my evaluation of the circumstances surrounding the introductions of the Maxxum 700 and AF–Tele cameras, my analysis of the available evidence, and my assessment of the difficulties and risks facing the plaintiffs at trial in establishing the extent of damages.

In light of this evidence, the Court concludes that the amount received by each qualified purchaser will compensate those consumers for their actual loss which oc-

curred as a result of the alleged conspiracy.

This recovery weighed against the relative strength of plaintiffs' case on the merits indicates that the proposed settlements are adequate. While the States believe the facts that would be presented at trial would establish the pricing conspiracy, convincing a jury that Minolta and its retailers violated the antitrust laws could nonetheless prove difficult. The proposed settlement reflects an appropriate balance between the finding of no violation of the antitrust laws or no damages to the consumers on the one hand, and the potential of treble damages on the other. Indeed, the certainty of the settlement amount and the opportunity for wide-spread distribution, far outweigh any loss of punitive recovery. The Court finds the balance particularly appropriate when the continuation of this litigation would entail significant costs to all involved.

The almost complete absence of opposition to the settlement also supports a finding of adequacy in this case. Based on the figures provided by Minolta, approximately 340,000 Maxxum and AF–Tele cameras were sold during the qualifying period to residents of the states in these actions. Approximately thirty percent of the purchasers were identifiable from Minolta's warranty cards and Minolta retailers were also able to provide customer information. Other purchasers received notice of settlement through court approved notice by publication. The notices invited consumers to submit comments on the proposed settlement either in writing or in person at the June 19 hearing. No consumers appeared at the hearing, and only nine mailed objections to the Court. Of these nine, six objected to the action taken by the plaintiffs in these actions against Minolta, rather than to the settlement. After reviewing the specific objections made in the remaining three letters, this Court does not find that the dissatisfaction expressed by these individuals renders the settlement inadequate. In summary, the weight of these factors leads this Court to conclude that the proposed settlements are fair, reasonable and adequate.

Accordingly, the Court will grant the Joint Motion for Final Approval of the Settlement Agreements Between the Plaintiff States and Defendant Minolta Corporation in a separate Order.