**Andrew G. SHEBAY, III,**
**Intervenor, Appellant,**

**v.**

**W.R. DAVIS, For Himself and on Behalf of the Class Comprised of All Sellers of Crude Oil to The Permian Corporation, and the Permian Corporation, Appellees.**

No. 08–86–00011–CV.

Court of Appeals of Texas,
El Paso.

Aug. 13, 1986.

Rehearing Denied Sept. 10, 1986.

Daniel K. Trevino, Jr., R. Scott Williams, Law Offices of Daniel K. Trevino, Jr., P.C., Houston, for appellant.

Cecil Munn, Cantey, Hanger, Gooch, Munn, & Collins, Fort Worth, Glen Clover, Liddell, Sapp & Zivley, Houston, for appellees.

Before STEPHEN F. PRESLAR, C.J. (Retired), OSBORN, C.J., and SCHULTE, J.

## OPINION

SCHULTE, Justice.

This suit originated as a class action for an accounting for overages of oil allegedly received and not paid for by The Permian Corporation (Permian). W.R. Davis (Davis), for himself and on behalf of other sellers of crude, originally filed the suit in 1979. Appellant here, an intervenor and seller of crude, contested the proposed settlement. Appeal is taken from the "Final Order Approving Settlement and Related Matters." This order of December 3, 1985, set up a settlement fund of $4,500,000.00 to be distributed by Permian. Certain fees, costs, expenses and taxes, as approved by the Court, were to be paid out of the fund. The order declared that it was a final judgment subject only to the continuing jurisdiction of the trial court to effect implementation. In approving the agreement, the judgment recited that the settlement was fair and reasonable. We affirm.

Davis alleged that Permian had received oil for which it had not paid as a result of improper volume measurements, with resulting damages to Davis and the class. Permian denied the allegations and raised specific affirmative defenses, including statute of limitations, estoppel and waiver. Permian also challenged the maintainability of the action as a class action and Davis's representation of the class. On January 30, 1980, the trial court certified the case as a class action pursuant to Rule 42(a) and 42(b)(4), Tex.R.Civ.P. Davis was designated representative of the plaintiff class comprised of all sellers of crude oil to Permian from October 1, 1973, through December 31, 1979. A notice of class action dated November 7, 1980, was sent to the class members informing them of the lawsuit. Appellant Andrew G. Shebay, III (Shebay), a class member, intervened on behalf of himself and a subclass on December 12, 1980. In September, 1981, Shebay filed a motion to certify a subclass. The motion was subsequently and materially amended on May 29, 1984. After a hearing, the trial court denied subclass certification on September 12, 1985. The trial court's denial of subclass certification is the subject of an interlocutory appeal concerning which a separate opinion issues contemporaneously with this opinion under our file No. 08–85–00255–CV.

In June, 1982, while this case was pending, Permian entered into a settlement with the Department of Energy (D.O.E.). As a part of this settlement and pursuant to the consent order evidencing that settlement, Permian established an escrow account. The funds in the escrow account were to be used in connection with judgments and settlements of certain litigation and claims between Permian and various claimants. In May, 1985, the proposed settlement agreement in this case was submitted to the D.O.E. for its approval. After reviewing the agreement and the history of the litigation, the D.O.E. approved payment of the $4.5 million settlement figure from the escrow account.

On September 12, 1985, the trial court conducted a hearing and approved a notice of class action settlement. Pursuant to the court's order, the approved notice, together with a copy of the settlement agreement and a show cause order, was distributed to the members of the "[c]lass certified on January 30, 1980, and to all persons and other entities who sold crude oil (including condensate) to The Permian Corporation at any time from January 1, 1973, through September 30, 1973, or from January 1, 1980, through December 31, 1983,...."

On November 19, 1985, the court held a hearing to consider approval of the settlement agreement, applications for payment of fees and expenses and other motions relating to the settlement. Testimony and evidence were introduced by Davis, Permian and Shebay. On December 3, 1985, the trial court signed the final order approving settlement and related matters.

◼ The Appellees contend by counterpoint that Appellant Shebay lacks standing to object to the settlement on appeal. They argue that Shebay voluntarily opted out of the class and, therefore, his rights cannot be affected and he is not bound by the

settlement. Appellees base their argument on the following exchange between the trial court and the Appellant's counsel, made during the hearing on the settlement agreement.

THE COURT: [W]ho do you represent here, Mr. Trevino?

MR. TREVINO: The intervenor, Mr. Andrew G. Shebay.

THE COURT: Has he opted out of this lawsuit?

MR. TREVINO: Mr. Shebay is an Intervenor, Your Honor. By the very sense of the deal, he has opted out, and he is specifically being represented in this—

A class action notice must advise a class member of the following:

(A) the nature of the suit; (B) that the court will exclude him from the class if he so requests by a specified date; (C) that the judgment, whether favorable or not, will include and bind all members who do not request exclusion by the specified date; and (D) that any member who does not request exclusion may if he desires, enter an appearance through his counsel.

Rule 42(c)(2), Tex.R.Civ.P. The class action notice in this suit informed Appellant that he had the right to be excluded if he requested "such exclusion by letter addressed and mailed to the District Clerk of Midland County, Texas, Post Office Box 1922, Midland, Texas, 79702 and postmarked on or before the 15th day of December, 1980." The notice also informed Appellant that if he did not request exclusion, he had the right to enter an appearance through separate counsel. Appellant filed a petition in intervention for himself and on behalf of a subclass. There is no record that he excluded himself from the class pursuant to statute. The quoted comment did not fulfill the formal requirements for exclusion. Furthermore, Shebay appeared through counsel at the settlement hearing in opposition to the settlement without objection from Appellees. Thus, Appellant remains a member of the class and may object to the settlement on appeal. The counterpoint is not sustainable.

Appellant advances four points of error encompassing multiple arguments. In reviewing this case we apply an abuse of discretion standard. "The approval of settlements in class actions is left to the sound discretion of the district court. A decision to approve will not be disturbed on appeal unless it is clearly shown that the approval resulted .from an abuse of discretion." *Miller v. Republic National Life Insurance Company*, 559 F.2d 426, 429 (5th Cir., 1977). The burden of proving that the trial court abused its discretion lies with the party attacking the court's action. *Marshall v. Good Times, Inc.*, 537 S.W.2d 536, 538 (Tex.Civ.App.—Fort Worth 1976, writ dism'd). An abuse of discretion implies more than error of judgment; it must amount to arbitrary and unreasonable action by the trial court. *Landry v. Travelers Insurance Company*, 458 S.W.2d 649, 651 (Tex.1970). In determining the abuse of discretion standard, we view the evidence in the light most favorable to the action of the court below and indulge every legal presumption in favor of the trial court's judgment. *Parks v. U.S. Home Corporation*, 652 S.W.2d 479, 485 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). The trial court's action is presumed to be correct and must be sustained in the absence of a contrary showing. *Lone Star Steel Company v. Owens*, 302 S.W.2d 213, 219 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.).

In Appellant's first point of error, he contends that the trial court abused its discretion by approving a class action settlement without issuing a memorandum opinion in support of its conclusion. Appellant cites *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 207 (5th Cir., 1981), and *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir., 1977), for the proposition that the trial judge must undertake an analysis of the facts and law relevant to the proposed compromise and support his conclusion by memorandum opinion or otherwise in the record so that an appellate court has a basis on which to judge the trial court's exercise of discretion.

The Appellees argue that the cases cited by Appellant are an interpretation of Fed. R.Civ.P. 52(a), which requires a judge to make findings of fact and conclusions of law. The Texas rules, on the other hand, only require that a judge file findings of fact and conclusions of law if requested to do so by the parties. Rule 296, Tex.R. Civ.P. According to Appellees, Appellant waived any right to complain by failing to make such a request.

It is not clear, however, that the cases cited by Appellant are an interpretation of federal Rule 52(a) or even that Appellant would be entitled to findings of fact and conclusions of law if he requested them pursuant to Rule 296, Tex.R.Civ.P. What is clear, however, is that the Texas Rules of Civil Procedure have no provision requiring a trial judge to issue a memorandum opinion in approving a class action settlement and we decline to establish such a requirement. We accept the rationale of the *Cotton* court that an appellate court "must have a basis for judging the exercise of the trial judge's discretion." *Cotton, supra.* Here, the record provides a sufficient basis on which to appraise the trial court's discretion. Appellant's Point of Error No. One is overruled.

In Appellant's second point of error, he contends that the trial court's approval of the settlement agreement improperly interferes with and impairs the effectiveness of the relief sought by interlocutory appeal of the denial to certify a subclass. It is not necessary for us to address Point of Error No. Two in that we have affirmed the trial court's refusal to certify a subclass in a separate opinion issued contemporaneously.

■ In Appellant's third point of error, he asserts that the settlement agreement violates the State Bar of Texas Code of Professional Responsibility. State Bar of Texas, Disciplinary Rules of Code of Professional Responsibility DR 2–108(B) (1984) states that "[i]n connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law." The set-

tlement agreement includes the following clause:

16. Cecil E. Munn and the law firm of Cantey, Hanger, Gooch, Munn & Collins hereby agree that, in consideration of this Settlement Agreement, they will not represent, or in any way aid in the representation of, any individual or class of individuals for or on behalf of any claim made by any individual or any class of individuals against Permian, or against any of its parents, subsidiaries, affiliates, predecessors, or successors, or against any of their officers, directors, employees or agents, relating to any claim involving the alleged mismeasurement of crude oil by Permian during the Settlement Period.

We need not and do not determine whether this clause violates the Code of Professional Responsibility. In any event, its inclusion does not void the settlement agreement. The attorneys involved in the agreement are not parties to this lawsuit. Nor does the agreement affect the outcome of the lawsuit. The ethics of the attorneys' actions, if justifiably questioned, are for a state bar grievance committee to decide and not for this tribunal. *Borden, Inc. v. Wallace,* 570 S.W.2d 445, 450 (Tex.Civ.App. —El Paso 1978, writ dism'd).

In Appellant's fourth point of error, he contends that the settlement agreement is unfair, inadequate and unreasonable to the certified class. Appellant makes several arguments under this point of error. His first contention is that the certified class was improperly expanded into a larger uncertified class.

■ The order granting class certification defined the class as "all persons and other entities who have sold crude oil (including condensate) to the Defendant THE PERMIAN CORPORATION at any time from October 1, 1973, through December 31, 1979." The settlement agreement included:

[A]ll sellers of crude oil to Permian during the period from January 1, 1973, through December 31, 1983 (the "Settlement Period"), including those sellers

who previously elected to withdraw from the litigation but who elect to participate in the benefits of this Settlement Agreement as provided herein (all of such sellers are sometimes hereinafter collectively referred to as "Participants"); ....

Appellant contends that although a class determination may be altered, it must be done pursuant to notice and hearing. However, Rule 42(c)(1) does not require notice and hearing in order to alter the class, and Appellant cites no cases mandating such a procedure. According to the Manual for Complex Litigation sec. 30.45 (2nd ed. 1986), parties seeking to alter the class for settlement purposes should explain in detail why the original class definition should be altered. Appellees provide an adequate explanation for expansion of the class. According to Appellees, the 2,000,000 barrels of oil figure used by the parties in negotiating the settlement is based upon all sales of crude oil to Permian during the entire settlement period by all persons invited to participate in the settlement. Had the settlement agreement not been based on negotiations predicated upon the total alleged overage of 2,000,000 barrels, the monetary figure which Permian would have agreed to pay in settlement might well have been substantially decreased. Thus, the expansion of the class for settlement purposes to include all persons who contributed to the alleged volume of overages upon which the settlement was based did not dilute the recovery to the certified class members. Appellant fails to show that the expansion of the class was an abuse of the court's discretion.

■ Appellant's second argument contends that the class action settlement notice was materially misleading because it did not state (1) how many potential members were in the class, (2) the amount of the litigation costs and what amount of money would be received by those electing to participate in the settlement, and (3) that Shebay had appealed from the court's denial of his motion to certify a subclass.

Rule 42(e) of the Texas Rules of Civil Procedure provides for notice of compromise to class members:

(e) **Dismissal or Compromise.** A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

We find that the notice of settlement sent to the class was adequate. The notice included all the information the trial court had directed to be included and the full text of the settlement agreement. As pointed out by the Appellees, it would be impossible to estimate the recovery which would be made by each class member. An estimation of attorney's fees and expenses would have required speculation, since applications for fees and expenses had not yet been presented when the notice was prepared. Finally, we have been shown no requirement that a class action settlement contain information regarding pending appeals.

In Appellant's third argument, he contends that there is a gross disparity between the value of the class's claim and the amount of money that will ultimately be distributed pursuant to the settlement agreement. Appellant appears to be complaining about the amount of fees and expenses and the actual settlement figure of $4.5 million. There is ample evidence in the record of the necessity and reasonableness of the fees and expenses. Appellant presents no evidence to the contrary.

■ In evaluating the fairness of a class settlement, there are a number of factors which must be considered: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative

and the absent class members. *Parker v. Anderson,* 667 F.2d 1204. (5th Cir., 1982), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65. The record demonstrates that these factors were considered by the trial court in approving the settlement. Appellant has been unable to show that the trial court abused its discretion in approving the $4.5 million settlement.

■ Appellant next contends that the settlement agreement unfairly exposes the certified class to severance tax liability. The agreement provides that if any taxes are due, owing or claimed, they will be paid out of the settlement fund. Appellant argues that it is unfair for the class to be responsible for any possible taxes.

The Texas Tax Code places a primary burden of paying severance taxes on the producer and not on the purchaser. Tex.Tax Code Ann. sec. 202.251 (Vernon 1982). Thus, the settlement agreement merely implements the state's tax policy. Furthermore, there is no evidence in the record of any potential tax claims. Only the State of Texas had presented a claim seeking severance taxes from the settlement fund, and that claim was withdrawn.

■ Appellant also complains of the interest awarded to the class representative. In approving expenses related to the lawsuit, the trial court awarded interest at the prime rate to W.R. Davis for money he advanced to finance the lawsuit. In *City of Detroit v. Grinnell Corporation,* 575 F.2d 1009 (2nd Cir., 1978), counsel for class representatives were found to be entitled to interest on judgment for fees and for sums advanced for employment of paraprofessionals and accountants. Under the general principles of equity, Davis should be allowed prejudgment interest on the money he advanced to finance the lawsuit. See: *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex.1985). The court's award was not an abuse of discretion.

■ Appellant also asserts that the trial court improperly delegated administration of the settlement and distribution to The Permian Corporation. After receipt by the district clerk, responses to the settlement notice were turned over to counsel for The Permian Corporation. When the settlement proceeds are distributed, The Permian Corporation will by necessity be involved since they possess the information necessary to calculate the proceeds payable to each participant. Appellant is unable to produce any evidence that Permian has improperly handled the settlement notice responses. We find no abuse of discretion in allowing Permian to administer the settlement under the orders of the court.

■ Additionally, Appellant suggests that the trial court abused its discretion in considering the lack of opposition to the settlement. The court order recites that Appellant "announced ready through counsel and stated opposition to the proposed Settlement." The Appellant points out in his brief that there were actually three objections. However, no one appeared in support of the first two objections and the third objection referred to was that of the Appellant. Taking into account that 200,000 notices of the proposed settlement had been sent and 80,000 responses received, and the court's recitation in part that it had considered "all of the evidence, argument, and statements of counsel, the pleadings, and all matters properly before it, ...," we can find no abuse of discretion in this regard. It has been recognized that the disapproval of the settlement by only a small percentage of the class members evidences its acceptability and is a proper consideration. *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir., 1977). In *American Employers' Insurance Company v. King Resources Company,* 556 F.2d 471, 478 (10th Cir., 1977), the court said in part: "[t]he very fact that King and King alone actively stands on the 'outside' opposing the settlement agreement is of striking significance and import."

Finally, Appellant contends that the settlement agreement was collusive. He advances the following in support of this contention: (1) Davis and his attorney agreed to pay the Permian Corporation $225,000.00

in attorney's fees out of the first settlement agreement proposed to the trial court in April, 1985; (2) the settlement was negotiated while the motion to certify a subclass was pending; (3) Davis and his attorneys allowed The Permian Corporation to administer the settlement notice and distribution; (4) counsel for the class representative violated professional ethics; (5) the class representative was uninformed about the terms of the settlement agreement; and (6) the class representative and his attorneys agreed to expand the class.

Appellant's contentions have no merit. He cites no cases and there is no evidence in the record suggesting collusion between the parties. Most of these contentions have been disposed of under prior points. We will comment briefly in regard to Appellant's concern about the $225,000.00 which was to be paid to the Permian Corporation. As is of record, this payment was for administrative costs and was to be paid out of the escrow fund set up by the D.O.E. in addition to the $4.5 million settlement. In any event, the payment was not allowed by the D.O.E. and it is not a part of the judgment from which appeal is taken. Appellant's Point of Error No. Four is overruled.

The judgment is affirmed.

STEPHEN F. PRESLAR, J., Ret., not sitting.